UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

Jarrell Miller                                              Case No. 25-10187-EPK
                                                            Chapter 7
    Debtor.
_____/

Jarrell Miller,

    Plaintiff

vs.                                                         Adv. Pro. No. 25-10187-EPK

Salita Promotions Corp. and
Star of David Inc.

    Defendants.
_____/

## ANSWER AND AFFIRMATIVE DEFENSES

Salita Promotions Corp. ("SPC") and Star of David Inc. ("SOD" and, together with SPC, Defendants") answer the Complaint [ECF No. 1] filed by Jarrell Miller ("Miller" or "Plaintiff") as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted that Plaintiff seeks declaratory relief. Unknown, and therefore denied, whether the case presents a case of actual controversy that is ripe for judicial determination.

## BACKGROUND

6. Admitted.

7. Unknown, and therefore denied.

8. Defendants admit that Plaintiff is a professional heavyweight boxer. Otherwise, unknown, and therefore denied.

9. Admitted that there are four major sanctioning organizations in boxing. As of the filing of this Answer, Miller is ranked number 3 in the world by the WBA. Otherwise, unknown, and therefore denied.

10. Admitted that Miller tested positive for three different Performance Enhancing Drugs ("PEDs") prior to his scheduled (but never consummated) bout for the World Heavyweight Championship scheduled for June 1, 2019, resulting in the New York State Athletic Commission denying Plaintiff's application for a boxing license. Admitted that Miller again tested positive for a PED prior to a comeback bout scheduled for July 9, 2020, against Jerry Forest, resulting in a two-year suspension by the Nevada State Athletic Commission ("NSAC"). Admitted that Miller did not have a professional boxing bout from November 18, 2018, until June 23, 2022. Otherwise, unknown, and therefore denied.

11. Unknown, and therefore denied.

12. Unknown, and therefore denied.

13. Unknown, and therefore denied.

## THE INITIAL PROMOTION AGREEMENT

14. Unknown, and therefore denied, except that Defendants admit that on March 15, 2014, Plaintiff entered into a promotional agreement with SOD, that SPC is currently the parent company of SOD, and that Dmitriy Salita ("Salita") is the President of SPC, and that SPC's offices are located in Southfield, Michigan.

15. Admitted.

16. Admitted.

## INITIAL NEW YORK LAWSUIT

17. Admitted.

18. Unknown, and therefore denied, except Defendants admit that SOD's lawsuit against Miller and additional defendants was settled as follows: Miller entered into a new promotional agreement (the "2017 Co-Promotional Agreement") with SPC and Miller Time Promotions, LLC ("MTP") on June 2, 2017; the Court retained jurisdiction over the new promotional agreement, including the jurisdiction to enforce it and to resolve any disputes arising out of it; and the lawsuit was discontinued by way of a stipulation dated June 5, 2017 and so-ordered by the Court on June 6, 2017.

## THE 2017 CO-PROMOTIONAL AGREEMENT

19. Admitted as to the first sentence of paragraph 19 of the Complaint. Otherwise, unknown, and therefore denied.

20. Admitted.

21. Admitted that the 2017 Co-Promotional Agreement "shall amend and replace the 2014 Agreement," and that pursuant to the agreement, Miller granted to SPC and MTP promotional rights to his bouts, and further that "Fighter [Miller] hereby irrevocably conveys, transfers and assigns payment of Fighter's Purse to MTP, it being understood that such payment will be made by SPC to MTP and Fighter, jointly, in Florida and constitutes the entirety of MTP's and Fighter's share of the co-promotion and is limited to the Fighter's Purse. In the event that any amounts of Net Revenues are paid solely to Fighter as a result of Fighter's local bout agreement or for any other reason whatsoever, such amounts paid to Fighter shall be deducted from any amounts due MTP/Fighter under this Agreement" (para. 2.1.4).  Denied as to Plaintiff's

suggestion that para. 6 of the 2017 Co-Promotional Agreement, titled "Disability/Retirement," in any way limits the type of remedy that SPC is permitted to seek for Debtor's breach of the agreement.

      22.     Denied.

      23.     Denied.

      24.     Admitted that under the 2017 Co-Promotional Agreement, Miller won five professional bouts at heavyweight from July 2017 to November 2018; that SPC arranged for Miller to fight champion Anthony Joshua for the World Heavyweight Championship at Madison Square Garden, in Miller's home town, on June 1, 2019; and that a Provisions of Services agreement ("POS") was signed on or about February 12, 2019, for Miller to fight Anthony Joshua. Otherwise, denied.

      25.     Admitted that by way of Amendment 1 to the 2017 Co-Promotional Agreement dated February 4, 2019, the 2017 Co-Promotional Agreement was extended to include Miller's championship bout against Anthony Joshua and three more bouts in the event of a loss, draw, no contest or cancellation. Otherwise, denied.

## DRUG TEST FAILURE, SUSPENSION

      26.     Admitted as to the following: that on April 17, 2019, the New York State Athletic Commission denied Miller a license to box in New York because of an adverse analytical finding by the Voluntary Anti-Doping Association ("VADA") based on the presence of a banned substance in a urine sample collected from Miller on March 20, 2019; that following the license denial, on April 18 and on April 19, 2019, VADA reported two more adverse analytical findings for banned substances; that on April 19, 2019, Matchroom terminated the POS, thereby cancelling Miller's opportunity to fight Anthony Joshua for the World Heavyweight

Championship; that as a result of Miller's positive tests for prohibited substances, the WBA, one of the four major sanctioning organizations in boxing, issued a six-month suspension to Miller; that following the WBA suspension, Miller was scheduled to fight opponent Jerry Forrest in a comeback bout on July 9, 2020; that prior to the July 9 bout, Miller again tested positive for a PED, resulting in a two-year suspension by the Nevada State Athletic Commission; and that as a result of the WBA suspension and later the NSAC suspension, Miller did not have another professional boxing bout until June 23, 2022. Otherwise, denied.

27. Admitted.

28. Admitted except that the bout against Derek Cardenas occurred on July 23, 2022. Admitted that all of the aforementioned bouts were co-promoted by SPC.

## EXPIRATION OF CO-PROMOTION AGREEMENT

29. Admitted.

30. Admitted.

31. Admitted that Miller did not enter into a new promotional agreement with SPC during the Exclusive Negotiation Period. Otherwise, unknown, and therefore denied.

32. Admitted.

33. The 2017 Co-Promotional Agreement speaks for itself. Denied to the extent that the Complaint mischaracterizes, misstates, and misinterprets the 2017 Co-Promotional Agreement.

34. Admitted that the Exclusive Negotiation Period expired on September 2, 2024. Otherwise, denied.

35. Denied.

## COUNT I
### (Declaration Regarding Expiration of Contract)

36. Defendants repeat and reallege their answers to paragraphs 1-35 as if fully set forth herein.

37. Denied.

WHEREFORE, Defendants request the Court enter judgment in favor of Defendants and declare that SPC possesses the promotional rights to Miller's next professional boxing bout and, at its option, Miller's subsequent two bouts.

## COUNT II
### (Rejection of Executory Contract)

38. Defendants repeat and reallege their answers to paragraphs 1-35 as if fully set forth herein.

39. Admitted.

40. Admitted.

41. Admitted solely to the extent that 11 U.S.C. § 365(g) states "rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease … immediately before the date of the filing of the petition." Denied to the extent paragraph 41 attempts to limit Defendants' rights upon rejection in a manner inconsistent with the Bankruptcy Code.

### AFFIRMATIVE DEFENSES

**First Affirmative Defense – Failure to State a Claim**

Plaintiff has failed to state a claim under Count II because no actual controversy exists as to whether the 2017 Co-Promotional Agreement was rejected in Plaintiff's bankruptcy. Accordingly, Plaintiff has not stated a claim for declaratory relief under 28 U.S.C. § 2201.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

Salita Promotions Corp. ("SPC") hereby files this Counterclaim for declaratory relief seeking a determination by the Court that SPC possesses the promotional rights to Jarrell Miller's ("Debtor" or "Miller") next professional boxing bout and, at its option, Miller's subsequent two bouts.

1. This counterclaim arises out of the same transactions and occurrences that are the subject matter of Miller's Complaint.

2. The Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1334 & 1367.

3. Miller is a resident of Palm Beach County, Florida and the debtor in the chapter 7 bankruptcy case *In re Jarrell Miller*, Case No. 25-10187-EPK pending in the United States Bankruptcy Court for the Southern District of Florida.

4. SPC is a New York corporation with its principal place of business in Southfield, Michigan. SPC is a boxing promoter.

5. On June 2, 2017, SPC, Miller and Miller's newly formed promotional company Miller Time Promotions, LLC ("MTP") resolved a pending lawsuit in New York State Supreme Court by entering into a promotional agreement (the "2017 Co-Promotional Agreement"). The 2017 Co-Promotional Agreement is attached hereto as Exhibit 1.

6. Under the 2017 Co-Promotional Agreement, Miller fought five times, on premium television networks Showtime and HBO and on premier streaming service DAZN, earning more than $1,000,000.00 in total gross purses for the five bouts.

7. Following the fifth of those bouts on November 17, 2018, SPC entered into extensive negotiations with boxing promoter Matchroom Limited for Miller to challenge Anthony Joshua for the Unified Heavyweight Championship of the World as sanctioned by the

WBA, IBF and WBO, three of the top four sanctioning organizations as universally recognized by the boxing industry (the other being the WBC).

8.     A deal was finalized on February 13, 2019, upon the full execution of a Provision of Services Agreement ("POS"), stating that Miller would challenge Anthony Joshua for sport's greatest prize, the Heavyweight Championship of the World, on June 1, 2019, at Madison Square Garden, known as "the Mecca of Boxing." (POS attached as Exhibit 2)

9.     Prior to finalizing the POS and in anticipation of the world championship bout, on February 4, 2019, the parties to the 2017 Co-Promotional Agreement agreed to an amendment that extended the agreement for three more bouts in the event of a loss, draw, no contest or the cancellation of the bout against Anthony Joshua. (Amendment 1 attached as Exhibit 3)

10.    In a subsequent amendment to the 2017 Co-Promotional Agreement dated June 13, 2022, the parties acknowledged that the 2017 Co-Promotional Agreement remained in effect, that SPC retained the right to promote Miller's next three bouts, and that SPC would make best efforts for Miller to participate in two "comeback" bouts prior to those three bouts. (Amendment 2 attached as Exhibit 3A).

11.    Following two comeback bouts, SPC co-promoted the three bouts remaining on the 2017 Co-Promotional Agreement: against Lucas Browne on March 18, 2023, Daniel Dubois on December 23, 2023, and Andy Ruiz on August 3, 2024.

12.    Following the August 3, 2024, bout with against Andy Ruiz, SPC's remaining promotional rights under the 2017 Promotional Agreement were governed by its Right of First Negotiation/Last Refusal (Paragraph 16).

13.    Paragraph 16(a) of the 2017 Co-Promotional Agreement provided a 30-day exclusive negotiation period (the "Exclusive Negotiation Period") whereby Miller would

negotiate exclusively with SPC with respect to the future promotional rights to Miller's bouts. The Exclusive Negotiation Period ended on September 2, 2024, with no agreement between the parties.

14. Paragraph 16(b) of the 2017 Co-Promotional Agreement provided a six-month period during which SPC had the right to match any third party offer made to Miller with respect to his future bouts, as follows:

> In the event no agreement between SPC and Fighter is reached with respect to a new exclusive promotional agreement by the end of the Exclusive Negotiation Period, Fighter may negotiate with any third party with respect to Fighter's promotional rights; provided, however, that during the period (the "Last Refusal Period") commencing on the expiration of the Exclusive Negotiation Period and ending six (6) months thereafter, Fighter may not enter into any agreement with a third party or parties with respect to Fighter's promotional rights, including, without limitation, promotional agreements, bout agreements or option agreements, without first making to SPC a written offer (containing full details in regard thereto as well as a copy of the actual offer received by Fighter from such third party), which offer shall be irrevocable for at least ten (10) business days after SPC's receipt thereof, to enter into an agreement with SPC therefor on the same Financial Terms (as defined below) offered by or to Fighter to or by said third party or parties.  If SPC rejects, or fails to accept, such offer within such 10 business day period, then and only then, shall Fighter be free to enter into such agreement with such third party or parties.  If Fighter does enter into such agreement with said third party or parties within 5 days of the expiration of such 10 business day period, the terms of this Paragraph shall apply to any outstanding, renewed or subsequent offer received or made by Fighter with respect to Fighter's promotional rights.  SPC's failure to accept any such offer from Fighter shall not constitute a waiver of SPC's rights of last refusal with respect to any outstanding, renewed or subsequent offers.  The parties understand and agree that the term "Financial Terms" only requires SPC to match the economic terms being offered by or to Fighter to or by said third party or parties for Fighter's purses for his bouts and does not require SPC to match any non-economic terms, including, without limitation, title opportunities, fighting on particular dates, fighting more than two times per year, fighting particular opponents, fighting on particular networks, or at particular venues.

15. The six-month Last Refusal Period commenced on September 3, 2024.

16. On November 19, 2024, Gregory Bloom, Miller's then-attorney, sent SPC an email stating that Miller had "received a written offer from Queensbury [sic] for Jarrell to fight

Derek Chisora" and setting forth "monetary terms" of the offer for the Chisora bout and two option bouts. Mr. Bloom then wrote, "Please let me know within the contracted time period how Salita will choose to proceed." (Email from Gregory Bloom attached as Exhibit 4)

17. In a subsequent email on November 19, Mr. Bloom wrote: "Attached please find the written offer from QP [i.e. Queensberry Promotions, hereinafter "Queensberry"] for Jarrell. Please confirm receipt and that the 10 day window will begin today." Mr. Bloom attached Queensberry's written offer on Queensberry letterhead; the "10 day window" referred to the time limit set forth in paragraph 16(b) of the 2017 Co-Promotional Agreement for SPC to accept the offer. (Email from Gregory Bloom attached as Exhibit 5 and Queensberry's written offer attached as Exhibit 6)

18. The Financial Terms of Queensberry's written offer were as follows: $1,000,000 for Miller's next bout with an upside based on ticket sales followed by two option bouts with minimum purses of $1,500,000 each.

19. On November 21, 2024, two days after receiving the offer from Mr. Bloom on behalf of Miller, SPC formally notified Mr. Bloom that it had decided to exercise its right to match the third party offer of Queensberry. SPC's acceptance to match Queensberry's offer created a binding agreement, extending the term of the 2017 Co-Promotional Agreement between Miller and SPC to include Miller's next bout and two subsequent option bouts. (Email from SPC attorney David Berlin attached as Exhibit 7)

20. Mr. Bloom acknowledged as much when he responded to the November 21, 2024 email with the words, "I will let him [Miller] know of your decision." (Email from Gregory Bloom attached as Exhibit 8)

21. Both SPC and Miller followed precisely the process set forth in paragraph 16(b) for matching a third party offer: Miller negotiated with a third party, Queensberry, with respect to future promotional rights; Miller received a written offer from Queensberry; Miller then made a written offer to SPC that included a copy of the actual offer received from Queensberry; two days after receiving the written offer from Miller, SPC notified Miller that it was electing to accept Miller's offer; Miller's attorney acknowledged the acceptance and said that he would let Miller know of SPC's decision.

22. Pursuant to the terms of the 2017 Co-Promotional Agreement, SPC acquired the promotional rights to Miller's next bout and, at its option, to Miller's two subsequent bouts based on the Financial Terms of the written offer.

23. Clearly unhappy that he was now contractually bound to SPC for his next three bouts, Miller sent an email later that day (November 21, 2024), stating, "I can tell you ONE thing DIMTRY you and your punk as lawyers can suck my d*** The fight is off GO F*** YOUR SELF AND GO STRAIGHT TO HELL ." [sic]  (Email from Miller attached as Exhibit 9)

24. Just over a week later, on November 30, 2024, Miller once again made his intentions clear with this note: "F*** yall. I will never fight for yall Or partner with you f***ing crooks kick rocks." (Email from Miller attached as Exhibit 10)

25. Despite SPC's efforts to arrange a bout for Miller pursuant to the written offer from Miller, Miller has refused to fight under the SPC promotional banner in defiance and clear repudiation of his contractual obligations.

26. Miller made clear in his emails his desire to escape his obligations to SPC with respect to his promotional rights, and less than two months after SPC matched Queensberry's

third party offer and after Miller asserted in writing that "I will never fight for yall," Miller filed for bankruptcy on January 9, 2025 (the "Petition Date") in order to avoid his obligations.

WHEREFORE, SPC requests the entry of a declaratory judgment finding and determining that SPC possesses the promotional rights to Miller's next professional boxing bout and, at its option, Miller's subsequent two bouts.

                                          Respectfully submitted,

                                          **SHRAIBERG PAGE, P.A.**
                                          Attorneys for Defendants
                                          2385 NW Executive Center Drive, Suite 300
                                          Boca Raton, Florida 33431
                                          Telephone: 561-443-0800
                                          Facsimile: 561-998-0047
                                          Email:  bss@slp.law

                                  By:    */s/ Bradley S. Shraiberg*
                                            Bradley S. Shraiberg
                                            Fla. Bar No. 121622
                                            Samuel W. Hess
                                            Fla. Bar No. 1044184

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Mail through the Case Management/Electronic Case Filing to those parties registered to receive electronic notices of filing in this case on August 1, 2025.

                                                                    */s/ Bradley S. Shraiberg*